IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACY L. TODD, | : | CIVIL NO. 1:CV-05-1994 |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| KENNETH D. KYLER, et al., | : | |
| Defendants | : | |

**M E M O R A N D U M**

**I.     Background**

Plaintiff Tracy L. Todd filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 3, 2005.  At that time, Todd was an inmate confined at the State Correctional Institution at Rockview, Pennsylvania.  Todd has since been released from prison and resides in Pittsburgh, Pennsylvania.  The incidents set forth in the complaint occurred while Plaintiff was confined at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"), Pennsylvania.  Named as Defendants are Jeffrey A. Beard, Secretary of the Department of Corrections ("DOC") and the following members of the staff at SCI-Huntingdon: Kenneth D. Kyler, James L. Grace, Don Pellegrino, C. McCoy and Diana Baney.  Also named as Defendants are the following four (4) employees of a contracted health care provider: Felipe Arias, Olga Beregovskaya, Angels Auman and D. Mills.  In the complaint, Plaintiff sets forth various Eighth Amendment claims including excessive force, deprivation of food, food tampering and inadequate medical care.  He also alleges that he was denied access to the law library, harassed and subjected to discrimination.  As relief he seeks monetary damages.  Presently pending before the Court are a "Motion to Dismiss Less Than all of Plaintiff's Claims" (Doc. 30) filed by Defendants Kyler, Grace, Pellegrino, McCoy and Baney. Also pending is a motion to dismiss the complaint filed by the four (4) medical defendants.  (Doc.

31.) Both motions are ripe for consideration by the Court.

## II. Allegations in Complaint

Plaintiff was transferred to SCI-Huntingdon on September 30, 2003, and denied all meals. On October 4, 2003, he states that he was assaulted while in the Restricted Housing Unit ("RHU") when Defendant Pellegrino dragged him from his cell by a rope attached to his handcuffs, causing him to hit his head several times on the floor and a table. Pellegrino thereafter hit Plaintiff on the face and other parts of his body with the rope. Plaintiff was then dragged back to his cell during which time he hit his head, was choked with the rope and kicked several times. He then was left in "a freezing cold cell" naked, and denied meals and medical attention. Defendant McCoy is alleged to have been present at the cell and to have taken all bed coverings, as well as Plaintiff's asthma inhalers. McCoy also called Plaintiff a "nigger" and threatened to kill him. Plaintiff further asserts that McCoy and Pellegrino convinced other RHU staff members to deny him food, showers, recreation and library time, and also make him crawl back and forth over 900 feet on his hands and knees to retrieve legal property. He claims that Defendants McCoy and Pellegrino had the RHU second shift spit on him and put glass and human waste in his food. Plaintiff contends that because of the assault and due to becoming sick over 40 times from the tainted food trays, he bleeds rectally and also when he urinates. According to Plaintiff, he sent over 300 DNA samples to the U.S. Department of Justice and contends that an investigation is currently taking place.

Plaintiff also claims that the medical department at SCI-Huntingdon failed to provide him with treatment following the assault and after becoming sick from the tainted food. He claims that the medical Defendants refuse to provide him with a wheelchair or walker to go to other places in the prison, and have withheld his asthma medication. Defendants are allegedly subjecting Plaintiff

2

to this treatment based upon the orders of two staff members of the State Correctional Institution at Greensburg, and because Plaintiff reported the assault which occurred on October 4, 2003.

In his complaint, Plaintiff sets forth his claims against each of the individual defendants as follows. He contends that Kenneth D. Kyler and James L. Grace are responsible for the cruel and unusual punishment he was subjected to because each of these individuals served as warden during the time period during which the above incidents occurred. As warden, each Defendant is legally responsible for the RHU and medical department staff. He claims that Felipe Arias, employed during the relevant time period as the medical director at SCI-Huntingdon, is responsible for his injuries because he failed to treat him following the assault or provide him with a walker, wheelchair or braces. Plaintiff contends that as medical director, Arias is responsible for all of the actions of his physicians assistants and their failure to provide him with his asthma medication and their role in treating him following the assault and food tampering incidents. Plaintiff further claims that Defendant Baney, Grievance Coordinator, violated his rights by blocking his access to the courts when she failed to process grievances he filed or failed to send back parts of his grievance which would allow him to appeal to the next level in the grievance system.

Physicians Assistants Mills and Auman are alleged to have violated Plaintiff's rights because they were aware of Pellegrino's assault and failed to provide medical care. According to Plaintiff, Mills discriminated against him on behalf of all the white RHU staff members by failing to provide a wheelchair or braces for his back, neck and knees, advising him to do sit ups and failing to treat his asthma. Auman is alleged to have failed to take pictures and treat Plaintiff's injuries following the assault, and take no action after he ingested glass.

Olga Beregovskaya, who was employed as a doctor at SCI-Huntingdon, is alleged to have

3

refused to treat Plaintiff's emergency medical needs following the assault and the food tampering incidents. Plaintiff contends she also failed to do anything when he was made to crawl on his hands and knees from place to place within the prison, all because he was a black inmate. It is alleged that Jeffrey A. Beard, Secretary of the DOC, is legally responsible for all the Defendants' actions because he is in charge of the overall operation of the state prisons within Pennsylvania.

### III.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant, in response to a complaint, to file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." A motion to dismiss should not be granted if "under any reasonable reading of the pleadings, the plaintiff [ ] may be entitled to relief . . . ." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). In making that decision, the court must accept as true all well-pleaded allegations in the complaint, Maio v. Aetna, Inc., 221 F.3d 472, 481-82 (3d Cir. 2000), and construe any reasonable inferences to be drawn from them in the plaintiff's favor. See United States v. Occidental Chemical Corp., 200 F.3d 143, 147 (3d Cir. 1999). Consequently, the court need not accept "bald assertions" or "legal conclusions." Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). Likewise, the court need not "conjure up unpled allegations or contrive elaborately arcane scripts" in order to breathe life into an otherwise defective complaint. Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002); Estelle v. Gamble, 429 U.S. 97, 107-08 (1976).

### IV.  Discussion

### A.     Motion to Dismiss by Corrections Defendants

The Corrections Defendants (Kyler, Grace, Beard, Baney, Pellegrino and McCoy) move to dismiss only some of the claims set forth against them in the complaint. They first contend that Defendants Kyler, Grace and Beard should be dismissed from this action in that the claims set forth against them are premised upon the theory of respondeat superior. Plaintiff claims that Defendants Kyler and Grace are liable because each served as Warden during the relevant time period and therefore are legally responsible for all of the prison's employees and all incidents that occur in both the RHU and the medical department. Defendant Beard is alleged to be responsible for all violations of Plaintiff's rights because as Secretary of the DOC, he oversees the operations of all the Pennsylvania prisons. It is well established, however, that civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Liability cannot be based solely on the basis of a defendant's supervisory capacity, that is, there must be allegations that the official had knowledge or acquiesced in any purported acts of constitutional mistreatment. In the instant case, Defendants Kyler, Grace and Beard are named solely based upon the positions they hold within the DOC. As such, the claims set forth against them will be dismissed from the complaint.

Defendants also move to dismiss the claims set forth in the complaint against Defendant Baney, Grievance Coordinator at SCI-Huntingdon. Plaintiff claims that Baney blocked his access to the courts when she failed to process his grievances, as well as return to him portions of his

5

grievances so that he could file appeals. Plaintiff fails to state a claim with regard to his contention that Baney violated his constitutional rights by failing to process his grievances. Prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring)("I do not suggest that the [grievance] procedures are constitutionally mandated."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998). While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts and such a right is not compromised by the failure of the prison to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).

To the extent that Plaintiff contends his right to access to the courts was violated by Baney, his claim is also subject to dismissal. It is well established that an inmate has a constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 349-56 (1996); Bounds v. Smith, 430 U.S. 817 (1977); Abdul-Akbar v. Watson, 4 F.3d 195, 202-03, 205 (3d Cir. 1993). However, the Supreme Court in Lewis has emphasized that a plaintiff alleging the denial of access to the courts must show "actual injury" - - such as dismissal of a suit or inability to file a compliant - - as a result of the purported unlawful acts in order to proceed with his suit. Lewis, 518 U.S. at 349-57. Plaintiff's complaint fails to assert any actual injury as a result of Baney's purported denial of his access to the courts and, accordingly, this claim will also be dismissed.

Defendants also seek dismissal of the claims made against Defendants Pellegrino and McCoy based on the racial slurs they allegedly directed at Plaintiff. Specifically, Plaintiff claims that Defendants called him "nigger." It has been held that the use of words, however violent, generally cannot constitute an assault actionable under § 1983. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d

6

Cir.), cert. denied, 414 U.S. 1033 (1973); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993)("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993)("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."); Jones v. Superintendent, 370 F. Supp. 488, 491 (W.D. Va. 1974). Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973); see also Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.)("[v]erbal abuse is not a civil rights violation . . ."), aff'd mem., 800 F.2d 1130 (3d Cir. 1986). Further, it has also been held that a constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause. See Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause, see Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir.), cert. denied, 502 U.S. 879 (1991). Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim, as, for example, a case where some action was taken by the Defendant that escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992)(a correctional officer placed a revolver to an inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988)(involving prison employee who threatened an inmate with a knife). In the instant case, Plaintiff does not contend that the purported racial slurs were accompanied by any type of reinforcing acts. Consequently, as his claims are solely based on verbal harassment, they are insufficient for the purposes of § 1983, and Defendants' request to dismiss those claims will be granted.

The only other claims sought to be dismissed by the Corrections Defendants at this time are those set forth by Plaintiff against Defendants Beard, Kyler, Grace and Baney in their official capacities. It is well-settled that the Eleventh Amendment bars suits in federal court that seek damages against state officials acting in their official capacities. See A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003). Accordingly, these claims will also be dismissed.

Based on the foregoing, the Corrections Defendants' motion to dismiss less than all claims will be granted. The action will proceed with regard to Defendants McCoy and Pellegrino on the remaining Eighth Amendment claims.

### B. Medical Defendants' Motion to Dismiss

#### 1. Inadequate Medical Care

The four (4) medical defendants named by Plaintiff have also filed a motion to dismiss the complaint. (Doc. 31.) Defendants Arias, Auman, Mills and Beregovskaya contend that the complaint fails to state a claim against them because Plaintiff merely alleges a disagreement with medical treatment and fails to allege any facts demonstrating a claim of racial discrimination.

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003); see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a

complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . ." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice." Id., 429 U.S. at 107.  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).  Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.  See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  In sum, negligence, unsuccessful medical treatment or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

With these standards in mind, the Court now addresses Defendants' motion to dismiss.  Plaintiff claims that Defendant Arias, as the medical director at SCI-Huntingdon, is responsible for the actions of the Physicians Assistants and their role in failing to treat him following the assault and the food tampering incidents.  As previously discussed, liability may not be imposed under § 1983 on the traditional standards of respondeat superior.  Rode, 845 F.2d at 1207-08.  "Supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct."  Capone v. Marinelli, 868 F.2d 102, 106 n.7 (3d Cir. 1989)(citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)).  Plaintiff fails to set forth any supporting facts demonstrating personal involvement by Arias in the alleged deprivation of medical care.  Accordingly, the Eighth Amendment medical claims against Arias will be dismissed.

9

The medical claims set forth against the remaining three medical defendants, however, will proceed.  Plaintiff alleges that both Mills and Auman were aware of the assault and his resulting injuries, yet failed to provide any medical treatment.  While Defendants state in their motion to dismiss that Plaintiff has failed to allege a serious medical condition, the Court will allow this matter to proceed in light of Plaintiff's allegations that he was dragged causing him to hit his head multiple times, hit and choked with a rope and kicked.  He claims that he was bleeding, in pain and unable to walk following the assault.  He further contends that as a result of glass being placed in his food, he experienced urinary and rectal bleeding.  It is further alleged that his asthma medication was denied.  Based on these allegations and without passing judgment as to the ultimate success of his claim, the Court finds that Plaintiff does state a medical claim against Defendants Mills and Auman.  While Defendants attempt to characterize Plaintiff's claims as mere disagreements with the medical treatment/decisions provided by the medical personnel, the Court rejects this argument and will allow Plaintiff to develop the record in that he clearly asserts that his requests for treatment were ignored and that he received no treatment at all.  The claims set forth against Defendant Beregovskaya will also not be dismissed at this point in that Plaintiff alleges she had personal involvement with regard to his requests for treatment yet did nothing for ten (10) months, and forced Plaintiff to crawl when he could not walk due to his alleged injuries.

  **2.**  **Racial Discrimination**

The Medical Defendants further seek dismissal of Plaintiff's claims of racial discrimination.  Woven throughout the complaint are general assertions by Plaintiff that Defendants discriminated against him because they are all white.  The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the

laws." This provision embodies the general rule that "all persons similarly situated should be treated alike." Williams v. Pennsylvania State Police - Bureau of Liquor Control Enforcement, 108 F. Supp.2d 460, 471 (E.D. Pa. 2000) citing City of Cleburne v. Cleburne Living Ctr., Inc. 473 U.S. 432, 439 (1985). To state a § 1983 Equal Protection claim in the prison setting, a plaintiff must allege purposeful discrimination against an identifiable or suspect class of inmates. See Barclay v. Poland, 2006 WL 14552 at *4 (W.D. N.Y. Jan, 19, 2006). To prevail on such a claim, a plaintiff must prove the defendant intended to discriminate. See Washington v. Davis, 426 U.S. 229, 238-39 (1976). Specifically, a plaintiff must show disparate impact plus some additional "indicia of purposeful discrimination." Pennsylvania v. Flaherty, 983 F.2d 1267, 1273 (3d Cir. 1993).

In the instant case Plaintiff has failed to set forth any allegations that Defendants intentionally discriminated against him on the basis of race. While he generally asserts that Defendants "discriminated against him because they are all white," he fails to set forth any facts that he was treated any differently than other similarly situated individuals on the basis of race or otherwise. Accordingly, his racial discrimination claims will be dismissed. An appropriate Order follows.

**V.    Order**

**AND NOW, THEREFORE, THIS 5th   DAY OF JANUARY, 2007,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The "Motion to Dismiss Less Than All Claims" filed by Defendants Kyler, Grace, Beard, Pellegrino, McCoy and Baney (Doc. 30) is **granted**. All claims set forth in the complaint against Defendants Kyler, Grace, Beard and Baney are dismissed. The claims which remain in this action and will proceed are the excessive force claim against Defendant Pellegrino and the conditions of confinement claims against Defendants Pellegrino and McCoy.

2. The motion to dismiss filed by Defendants Arias, Auman, Mills and Beregovskaya

>    (Doc. 31) is **granted in part and denied in part**.  All claims set forth against Defendant Arias are dismissed.  The claims of racial discrimination against the Medical Defendants are dismissed.  The motion to dismiss is denied with regard to the Eighth Amendment inadequate medical care claims set forth against Defendants Auman, Mills and Beregovskaya.

3. Within twenty (20) days from the date of this Order, the remaining Defendants are directed to file an answer to the complaint.


        s/ Yvette Kane
        YVETTE KANE
        Chief Judge
        United States District Judge